1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                             EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                     No. 2:11-cr-00387-KJM

12                 Plaintiff,

13         v.                                       ORDER

14   MATTHEW A. SARAD,

15                 Defendant.

16

17              This matter is before the court on defendant Matthew Sarad's motion to dismiss

18   counts 13 and 14 of the indictment.  (Def.'s Mot. to Dismiss, ECF 29.)  Specifically, defendant

19   seeks to dismiss the money laundering charges brought against him under 18 U.S.C.

20   § 1956(a)(1)(A)(I).  The United States ("government") opposes the motion.  (Government's

21   Opp'n, ECF 35.)  The court held a hearing on December 4, 2013, at which Assistant U.S.

22   Attorney Steven Lapham appeared for the government and Joseph Wiseman appeared for

23   defendant.  As explained below, the court DENIES the motion.

24         I.     BACKGROUND

25              Defendant is charged with five counts of wire fraud in violation of 18 U.S.C.

26   § 1343; eleven counts of mail fraud in violation of 18 U.S.C. § 1341; two counts of money

27   laundering in violation of 18 U.S.C. § 1956(a)(1); and five counts of monetary transactions in

28   criminally derived property in violation of 18 U.S.C. § 1957.  (Indictment, ECF 1.)  The counts

1

1    covered by the instant motion are counts 13 and 14, which charge defendant with money

2    laundering.  (*Id.* at 12.)

3             Generally, the indictment charges defendant with two fraudulent schemes.  (*Id.* at

4    2, 14.)  The first lasted from November 2005 through July 2008.  (*Id.* at 2.)  The scheme involved

5    Telomolecular Corporation ("Telomolecular"), a corporation found by defendant in August 2005.

6    (*Id.*)  Telomolecular's principle place of business was in Rancho Cordova, California.  (*Id.*)

7    Telomolecular "purported to be a biotechnology startup company and claimed to have developed

8    nanoparticle technology that could eradicate cancer and treat other age-related diseases."  (*Id.* at

9    2.)  Defendant used these claims to solicit individuals and entities to invest in the company.  (*Id.*)

10             The second fraudulent scheme lasted from January 2009 through December 2009.

11   (*Id.* at 14.)  This scheme involved a company found by defendant, Sun Nanosystems Corporation

12   ("Sun").  Defendant created Sun in January 2009 "with its principal place of business in Folsom,

13   California."  (*Id.*)  Defendant represented Sun to be in the business of installing solar energy

14   systems for residential and commercial customers.  (*Id.*)  "Sun . . . claimed to have developed

15   nanoparticle technology that vastly increased the efficiency of solar panels."  (*Id.* at 14.)  Based

16   on this alleged misrepresentation and many other false claims, Sun sold six solar energy systems

17   and collected revenue of approximately $300,000 without actually completing the installations of

18   any of the systems.  (*Id.*)

19             The charged transaction supporting Count 13 is a Telomolecular check card

20   purchase payable to Publicity Guaranteed in the amount of $1,255, dated September 28, 2006.

21   (*Id.*)  The transaction in Count 14 is a Telomolecular check card purchase payable to Publicity

22   Guaranteed in the amount of $2,200, dated October 11, 2006.  (*Id.*)

23        II.    STANDARD

24             Under Federal Rule of Criminal Procedure ("Rule") 12(b), "[a] party may raise by

25   pretrial motion any defense, objection, or request that the court can determine without a trial of

26   the general issue."  For instance, a party by a Rule 12(b) motion may raise "a defect in the

27   indictment," such as "a claim that the indictment . . . fails . . . to state an offense."  FED. R. CRIM.

28   P. 12(b)(3)(B).

1    An indictment "must be a plain, concise, and definite written statement of the

2    essential facts constituting the offense charged . . . ." FED. R. CRIM. P. 7(c)(1).  An indictment is

3    sufficient if it contains the elements of the offense charged with sufficient clarity to apprise a

4    defendant of the charge against which the defendant must defend and to allow the defendant to

5    plead double jeopardy. *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982).  That is,

6    assuming the truth of the allegations, the issue is "whether the indictment adequately alleges the

7    elements of the offense and fairly informs the defendant of the charge, not whether the

8    [g]overnment can prove its case." *Id.* at 897.  Furthermore, the government need not allege

9    supporting evidence, but only the "essential facts necessary to apprise a defendant of the crime

10   charged." *Id.* (quoting *United States v. Markee*, 425 F.2d 1043, 1047-48 (9th Cir. 1970)).

11       III.   ANALYSIS

12       Defendant argues that counts 13 and 14 each fail to state an element of the money

13   laundering charges because the underlying transactions do not implicate "profits" of the alleged

14   unlawful activity; rather the underlying two transactions deal with "proceeds" of the alleged

15   scheme. (ECF 29-1 at 1-4.)  Defendant reasons as follows:  the underlying financial transactions

16   "went to paying for publicity, in order to further the scheme to defraud"; thus, they were

17   payments for expenses to further the underlying scheme.  (*Id.* at 4.)  Moreover, the transactions

18   took place "at the beginning of the scheme and were a key part of assisting the defendant in

19   generating new investment." (*Id.*)  Accordingly, they played a central part in the scheme of luring

20   new investors, hence they do not represent "profits" as required by *United States v. Santos*,

21   553 U.S. 507 (2008). (*Id.*)  Instead, defendant concludes, "[a] common sense reading of the

22   indictment shows that the [g]overnment has charged [defendant] with engaging in a financial

23   transaction with receipts, not profits, of an unlawful activity." (ECF 37 at 2 (emphasis in

24   original).)

25       The government responds that the question of whether the underlying two

26   transactions should be treated as "profits," rather than "receipts," will be for the jury to decide.

27   (ECF 35 at 1.)  The government reasons dismissal "is not an appropriate remedy" under the

28   circumstances present in the instant case because counts 13 and 14 are facially valid as they set

3

1  forth the elements of the charged offenses.  (*Id.* at 4.)  Furthermore, the government reasons a

2  district court should engage in *Santos* analysis only when "the purpose of this analysis is to

3  determine" how the jury ought to be instructed.  (*Id.* at 6.)  Here, as a preliminary matter, the

4  court notes the parties agree that 18 U.S.C. § 1956(a)(1) as interpreted in *Santos* applies.

5         The court finds counts 13 and 14 are sufficiently pled because they contain all of

6  the essential elements of the charged money laundering offenses.  To the extent defendant's

7  argument focuses on the appropriate definition of the "proceeds" prong of 18 U.S.C.

8  § 1956(a)(1), the argument is premature.  As explained below, at this stage and from the face of

9  the indictment, the court cannot engage in a meaningful analysis of whether a "merger problem"

10  may arise as initially articulated in *Santos* and further interpreted in *United States v. Grasso*,

11  724 F.3d 1077, 1092 (9th Cir. 2013), *cert. denied*, ___ U.S. ___, 134 S. Ct. 484 (2013).  *See*

12  *United States v. Jensen*, 93 F.3d 667, 669 (in deciding a motion to dismiss for failure to state an

13  offense, courts are bound by the four corners of the indictment).

14         In *Santos*, the Supreme Court sought to define the term "proceeds" as stated in

15  § 1956, but a majority of the court was unable to do so.  553 U.S. 507.  The plurality opinion

16  determined that defining "proceeds" to mean "receipts" may lead to a "merger problem."  *Id.* at

17  515.  That is, "any specified unlawful activity, an episode of which includes transactions which

18  are not elements of the offense and in which a participant passes receipts on to someone else,

19  would merge with money laundering."  *Id.* at 516.  Hence, the plurality noted "Congress would

20  [not] have wanted a transaction that is a normal part of a crime it had duly considered and

21  appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that

22  crime."  *Id.* at 517.

23         The Ninth Circuit, in analyzing *Santos*, has derived the following controlling rule:

24  "'proceeds' means 'profits' where viewing 'proceeds' as 'receipts' would present a 'merger'

25  problem of the kind that troubled the plurality and concurrence in *Santos*." *Grasso*, 724 F.3d at

26  1092 (internal quotation marks and citation omitted).  Courts should consider the following three

27  factors in determining whether a "merger problem" arises: (1) whether the underlying transaction

28  was a "central component" of the underlying scheme; (2) whether the inclusion of the money

4

1    laundering charges results in a "radical increase in the statutory maximum sentence for the

2    underlying offense"; and (3) whether the financial transaction involved co-conspirators.  *Id.* at

3    1092-93 (internal quotation marks and citation omitted).

4            The second and third *Grasso* factors are not at issue here.  As to the second factor,

5    defendant is charged with mail fraud, which carries a maximum sentence of twenty years, and money

6    laundering which also carries a maximum sentence of twenty years.  (ECF 35 at 6.)  Thus, the parties

7    agree that "Congress's choice of penalty would not be 'eviscerated' by the [twenty-year] statutory

8    maximum sentence for money laundering."  *Grasso*, 724 F.3d at 1093.  In addition, the parties

9    agree that the third *Grasso* factor is not implicated because there are no co-conspirator

10   allegations.  (ECF 35 at 6.)

11           However, as to the first factor, it is not clear whether the underlying two financial

12   transactions were "central components" of the first scheme alleged.  While the allegations are

13   sufficient to put the defendant on notice of the charged offense, they are not sufficiently detailed

14   to allow the court to determine that they were "central components" of that scheme.  The court

15   will be better positioned to make this determination after the close of evidence at trial.

16           Moreover, defendant cites no legal authority requiring the government to allege

17   specific facts clarifying whether defendant's conduct meets a particular definition of an element,

18   in addition to alleging the essential elements of the charged offense.  Rather, Rule 7(c)(1) requires

19   the indictment simply to contain a plain and concise statement sufficient to put a defendant on

20   notice of the offense charged.  Here, the allegations in the indictment track the statutory language

21   of the alleged money laundering crime, and counts 13 and 14 specifically identify the two

22   financial transactions the government alleges support the offenses charged.  *See United States v.*

23   *Givens*, 767 F.2d 574, 584 (9th Cir. 1985) (holding an indictment that tracks the offense in the

24   words of the statute is sufficient "so long as the words unambiguously set forth all elements

25   necessary to constitute the offense"); *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979)

26   (indictment must "set forth the elements of the offense charged and contain a statement of the

27   facts and circumstances that will inform the accused of the specific offense with which he is

28   charged").  Additionally, counts 13 and 14 specify the amounts involved, to whom the amounts

1 │ were paid, and the dates on which the amounts were paid.  (ECF 1 at 12.)  Because these

2 │ allegations are sufficient to put the defendant on notice of the charged offense, the court finds the

3 │ indictment is sufficiently pled as to counts 13 and 14.

4 │         Accordingly, the court DENIES defendant's motion to dismiss counts 13 and 14 of

5 │ the indictment.

6 │         IT IS SO ORDERED.

7 │ DATED:  January 13, 2014.

8 │

9 │ _____

10 │         UNITED STATES DISTRICT JUDGE