1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                    No. 2:11-cr-00387-KJM

12            Plaintiff,

13      v.                                          ORDER

14   MATTHEW A. SARAD,

15            Defendant.

16

17            This matter is before the court on defendant Matthew Sarad's Motion to Sever

18   counts 1 through 19 from counts 20 through 23 of the indictment.  (Def.'s Mot. to Sever, ECF

19   30.)  The United States ("government") opposes the motion.  (Government's Opp'n, ECF 36.)

20   The court held a hearing on December 4, 2013, at which Assistant United States Attorney Steven

21   Lapham appeared for the government and Joseph Wiseman appeared for defendant.  As explained

22   below, the court GRANTS the motion.

23   I.      BACKGROUND

24            Defendant is charged with five counts of wire fraud in violation of 18 U.S.C.

25   § 1343; eleven counts of mail fraud in violation of 18 U.S.C. § 1341; two counts of money

26   laundering in violation of 18 U.S.C. § 1956(a)(1); and five counts of monetary transactions in

27   criminally derived property in violation of 18 U.S.C. § 1957.  (Indictment, ECF 1.)  The

28   indictment charges defendant with two fraudulent schemes.  (*Id.* at 2, 14.)

1    The first scheme, alleged in counts 1 through 19, lasted from November 2005

2    through July 2008.  (*Id.* at 2.)  It involved Telomolecular Corporation ("Telomolecular"), a

3    corporation founded by defendant in August 2005.  (*Id.*)  Telomolecular's principal place of

4    business was in Rancho Cordova, California.  (*Id.*)  Telomolecular "purported to be a

5    biotechnology startup company and claimed to have developed nanoparticle technology that

6    could eradicate cancer and treat other age-related diseases."  (*Id.* at 2.)  Defendant used these

7    alleged false claims to solicit individuals and entities to invest in the company.  (*Id.*)

8    The second scheme, alleged in counts 20 through 23, lasted from January 2009

9    through December 2009.  (*Id.* at 14.)  It involved a company found by defendant, Sun

10   Nanosystems Corporation ("Sun").  Defendant created Sun in January 2009 "with its principal

11   place of business in Folsom, California."  (*Id.*)  Defendant represented Sun to be in the business

12   of installing solar energy systems for residential and commercial customers.  (*Id.*)  "Sun claimed

13   to have developed nanoparticle technology that vastly increased the efficiency of solar panels."

14   (*Id.* at 14.)  Based on this alleged misrepresentation and other false claims, Sun sold six solar

15   energy systems and collected revenue of approximately $300,000 without actually completing the

16   installations of any of the systems.  (*Id.*)

17   II.   UNDERLINE_DISCUSSION

18   In support of his motion to sever, defendant makes two principal arguments.  First,

19   defendant argues counts 1 through 19 should be severed from 20 through 23 because "the two

20   schemes were improperly joined" under Federal Rule of Criminal Procedure ("Rule") 8(a).  (ECF

21   30 at 1.)  Second, in the alternative, defendant argues even if joinder is proper under Rule 8(a),

22   severance is warranted under Rule 14(a) because the joinder is prejudicial to defendant.  (*Id.*)

23   Because the court concludes joinder to be improper under Rule 8(a), it does not address

24   defendant's argument under Rule 14(a).

25   A.  The Propriety of Joinder under Rule 8(a)

26   Defendant argues joinder of the two schemes is improper because the schemes are

27   not of the same or similar character as required under Rule 8(a).  (ECF 30-1 at 2.)  Moreover,

28   defendant reasons because "the two schemes occurred at different times, in different places, and

2

1    with different victims, it cannot be argued that they are the same transaction, nor a common

2    scheme or plan." (*Id.*)

3          The government responds the charges for both schemes are the same. (ECF 36 at

4    1.) The charges are the same, the government argues, in that defendant "is charged with wire

5    fraud and mail fraud in connection with the fraud scheme that lasted from November 2005

6    through July 2008. He is charged with mail fraud in connection with the scheme that lasted from

7    January 2009 through December 2009." (*Id.*) Alternatively, the government argues there is

8    "sufficient similarity between the two schemes to permit joinder." (*Id.* at 5.)

9          Rule 8(a) provides that "[t]he indictment . . . may charge a defendant in separate

10   counts with 2 or more offenses if the offenses charged . . . (1) are of the same or similar character,

11   or (2) are based on the same act or transaction, or (3) are connected with or constitute parts of a

12   common scheme or plan." Rule 8(a) allows joinder of more than one offense against a single

13   defendant if any one of the three tests is satisfied. *United States v. Jawara*, 474 F.3d 565, 573

14   (9th Cir. 2007). The propriety of joinder is determined by examining the allegations in the

15   indictment. *Id.* at 572-73 (noting "that a valid basis for joinder should be discernible from the

16   face of the indictment). At the hearing, the government clarified that it relies on only the first

17   "same or similar character" basis for joinder. (ECF 36 at 1.) Accordingly, the court addresses

18   that prong only.

19          B.  Same or Similar Prong Analysis

20          The "same or similar character" prong "is the most amorphous and controversial

21   of the three grounds for joinder." *Jawara*, 474 F.3d at 575. Instead of adopting a "literal"

22   approach, as urged by the government, courts consider the following factors in determining

23   whether separate charges in an indictment meet the "same or similar character" prong:  (1) "the

24   elements of the statutory offenses"; (2) "the temporal proximity of the acts"; (3) "the likelihood

25   and extent of evidentiary overlap"; (4) the physical location of the acts; (5) "the modus operandi

26   of the crimes"; and (6) "the identity of the victims." *Id.* at 577-78. "The weight given to a

27   particular factor will depend on the specific context of the case and the allegations in the

28   indictment." *Id.* at 578. Moreover, "the similar character of the joined offenses should be

1    ascertainable–either readily apparent or reasonably inferred–from the face of the indictment." *Id.*

2    "Courts should not have to engage in inferential gymnastics or resort to implausible levels of

3    abstraction to divine similarity." *Id.* Where the government seeks to join counts on the basis of

4    "same or similar character," "it crafts a barebones indictment at its own risk." *Id.*

5            As discussed below, the court concludes counts 1 through 19 and 20 through 23 of

6    the indictment are not of the "same or similar character." In making this determination, the court

7    assigns factors one, three, five and six the most weight in light of the "specific context of the case

8    and the allegations in the indictment." *Id.* The remaining factors, time frame and location, are

9    too general to outweigh the pertinent factors.

10                        1.   Statutory Offense Elements

11           As to the first factor, counts 1 through 19 charge defendant with wire fraud, mail

12   fraud, money laundering, and monetary transactions in criminally derived property. (ECF 1 at 1-

13   13.) Counts 20 through 23 charge defendant with mail fraud only. (*Id.* at 14.) Only the mail and

14   wire fraud charges of counts 1 through 19 have the same elements as the mail fraud charges of

15   counts 20 through 23, although naturally wire fraud must involve the wires and mail fraud must

16   involve the mail. *Compare United States v. McNeil*, 320 F.3d 1034, 1040 (9th Cir. 2003) ("Wire

17   fraud has three elements: (1) a scheme to defraud, (2) use of the wires in furtherance of the

18   scheme, (3) and the specific intent to defraud.") *with Miller v. Yokohama Tire Corp.*, 358 F.3d

19   616, 620 (9th Cir. 2004) (mail fraud has three elements: (1) a scheme or artifice to defraud;

20   (2) use of the United States mails in furtherance of the scheme; and (3) the specific intent to

21   deceive or defraud).

22           The elements for the charges of money laundering and monetary transactions in

23   criminally derived property are different from the elements of mail fraud. *Compare id. with*

24   *United States v. Marbella*, 73 F.3d 1508, 1514 (9th Cir. 1996) ("To support a conviction for

25   money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), the government must prove [defendant]

26   (1) engaged in a financial transaction which involved proceeds from specified illegal activity,

27   (2) [defendant] knew the proceeds were from illegal activity, and (3) intended the transaction to

28   . . . promote the illegal activity . . . .") *and United States v. Rutgard*, 116 F.3d 1270, 1291 (9th

4

1 | Cir. 1997) (a conviction for engaging in monetary transactions in property derived from specified

2 | unlawful activity under 18 U.S.C. § 1957(a) requires the government to prove defendant

3 | (1) knowingly engaged or attempted to engage in monetary transactions in criminally derived

4 | property of a value greater than $10,000 and (2) the criminally derived property was derived from

5 | specified unlawful activity).

6 | Accordingly, "the indictment alleges different statutory violations requiring proof

7 | of different elements." *Jawara*, 474 F.3d at 578. The fact that both schemes involved mail or

8 | wire fraud is not by itself a reason to join the counts for trial. Thus, this factor weighs in favor of

9 | finding the joinder improper.

10 | 2. Temporal Proximity

11 | As to the second factor, temporal connection, the first scheme lasted from

12 | November 2005 through July 2008, and the second scheme lasted from January 2009 through

13 | December 2009. The relatively short eight month separation does not weigh against joinder. *Id.*

14 | (three-and-a-half years too long a time to justify joinder).

15 | 3. Evidentiary Overlap

16 | As to the third factor, the likelihood of evidentiary overlap is slight. No

17 | evidentiary link is ascertainable from the face of the indictment as the alleged schemes were

18 | committed on different dates and involved different misrepresentations. Rather, the government

19 | argues even if the schemes were tried separately, "evidence of the Sun . . . fraud would be

20 | admissible under [Federal Rule of Evidence 404(b)], and vice versa." (ECF 36 at 5 n.2.)

21 | Whether evidence of the first scheme will be admissible in a separate trial of the second scheme,

22 | however, is unclear at this stage of prosecution. The question of admissibility of evidence of the

23 | first scheme under Rule 404(b) is not before the court at this time. And the government does not

24 | identify any overlapping direct evidence, such as key documents or overlapping witnesses, except

25 | for defendant should he choose to testify. The lack of direct evidentiary overlap weighs in favor

26 | of finding the joinder improper. *See Jawara, 474 F.3d at 578* (noting that in considering the

27 | extent of common evidence, courts concentrate on "the important evidence" (quoting *United*

28 | *States v. Randazzo*, 80 F.3d 623, 628 (1st Cir. 1996))).

1      4.   Physical Location of Acts

2           As to the fourth factor, both schemes involved essentially the same geographic

3  location.  Telomolecular was located in Rancho Cordova, California, and Sun was located a

4  relatively few miles away in Folsom, California; both schemes allegedly occurred in the Eastern

5  District of California.  This factor weighs in favor of joinder.

6      5.   Modus Operandi

7           As to the fifth factor, the indictment evidences a common mode of operation in

8  alleging that both schemes involved defendant's purported expertise in nanotechnology as a way

9  to mislead victims.  These allegations are distinguishable from those in *Jawara*, where the court

10 found "lying about being from Sierra Leone on an asylum application [was] vastly different from

11 facilitating or procuring meetings with prospective marriage candidates."  474 F.3d at 579.

12 There, the only similarity was a "vague thematic connection" in that both counts involved

13 immigration.  (*Id.*)  In the instant case, in contrast, both schemes involved fraud and both also

14 utilized defendant's claims about nanotechnology and new innovations using nanotechnology.

15 The fifth factor weighs in favor of finding the joinder proper.

16      6.   Victim Identities

17          As to the final factor, the victims of each scheme appear to be different from the

18 face of the indictment.  (ECF 1 at 2, 14.)  Indeed, the government admits "[t]he only factor

19 favoring . . . defendant is the obvious one that the victims of the two schemes are different."

20 (ECF 36 at 5.)  This factor weighs in favor of finding joinder improper.

21          In conclusion, looking at the larger picture, the court notes that the "customary

22 justifications for joinder (efficiency and economy)" will not be furthered by allowing joinder in

23 the instant case.  *Jawara*, 474 F.3d at 575 (quoting *United States v. Halper*, 590 F.2d 422, 430

24 (2d Cir. 1978)).  As explained above, the elements of the offenses here are not the same, an

25 evidentiary link is not ascertainable from the face of the indictment, and the victims' identities are

26 different.  Although the modus operandi of the charged offenses weighs in favor of finding

27 joinder proper, that factor along with the general factors of time frame and location is insufficient

28 to outweigh the other more important factors.

1           Therefore, after weighing the *Jawara* factors, the court finds that counts 1 through

2   19 and counts 20 through 23 are improperly joined.  474 F.3d at 578.  Accordingly, counts 1

3   through 19 must be severed from counts 20 through 23.

4   III.   <u>CONCLUSION</u>

5           For the foregoing reasons, the court orders that defendant's Motion to Sever is

6   GRANTED.

7           IT IS SO ORDERED.

8   Dated:  February 4, 2014.

9

10                           UNITED STATES DISTRICT JUDGE

7