UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:11-cr-0387 KJM |
| Plaintiff, | |
| v. | ORDER |
| MATTHEW SARAD, | |
| Defendant. | |

Defendant, a federal prisoner proceeding pro se, has filed a motion to vacate, set aside, or correct his sentence based on 28 U.S.C. § 2255, along with a motion to grant bail. Plaintiff opposes both motions. For the reasons discussed in this order both motions are DENIED.

I. BACKGROUND

On August 6, 2014, in accordance with a plea agreement reached with the government, defendant entered a plea of guilty to one count of securities fraud in violation of 15 U.S.C. §§ 77q(a) and 77x. ECF Nos. 58, 61. Plaintiff at the time was represented by attorney Joseph Wiseman. *Id*. at 61. Sentencing was initially set for November 19, 2014, *id*., but was continued several times between November 19, 2014 and January 5, 2015. *See* ECF Nos. 66, 67, 74, 75. On February 18, 2015, defendant submitted a motion to terminate counsel. ECF No. 77.

1

On February 19, 2015, the court ordered that motion filed under seal and the sentencing hearing then set for February 25, 2015 was converted to a status conference. *Id*.

On February 25, 2015, the court appointed a second defense counsel, attorney Donald Heller, "for the limited purpose of providing the defendant with a second opinion." ECF No. 80. Sentencing was continued to April 15, 2015, then to June 3, 2015, then to July 22, 2015. ECF Nos. 80, 81, 84. On April 15, 2015, Mr. Heller was relieved as second opinion counsel for defendant. ECF No. 81. On July 9, 2015, Mr. Wiseman moved to withdraw as counsel for defendant. ECF No. 86. On July 22, 2015, the court granted Mr. Wiseman's motion to withdraw and appointed standby counsel, attorney Bruce Locke, initially for a one week period. ECF No. 88. Defendant informed the court that he wanted to move to withdraw his plea and to request an evidentiary hearing. *Id*.

On July 29, 2015, the court appointed Mr. Locke to represent defendant and directed the parties to meet and confer concerning a dispute between the parties concerning defendant's *mens rea*. ECF Nos. 92, 97. On August 21, 2015, the parties filed a "Stipulation for Sentencing." ECF No. 97. The stipulation provided:

> The defendant, Matthew Sarad, by and through his undersigned attorney, and the United States, by and through its undersigned attorney, hereby stipulate to the following facts so as to resolve an issue that has been in contention in this sentencing proceeding:
>
> The defendant paid real scientists to perform real research, but from the beginning he made a series of misrepresentations to cause investors to part with money, as outlined in the plea bargain, in violation of 15 U.S.C. §§ 77q(a) and 77x. The plea bargain mental state discusses and includes the standard of reckless or willful. The defendant believes that absent a trial the lower mental state is to be presumed, but the government disagrees.

ECF No. 97 at 1.[1]

---

[1] All references to page numbers in documents filed in the court's Electronic Case Filing (ECF) system are to the page numbers assigned by the ECF system and located at the top of the page.

2

1  On August 26, 2015, defendant was sentenced to forty-eight months in prison.
2  ECF Nos. 100, 101, 102. The sentence reflected a downward variance from the Guideline range
3  of 60 months, the statutory maximum. ECF No. 102. Defendant filed his § 2255 motion on
4  December 28, 2015. ECF No. 115. He began serving his sentence on January 4, 2016, and his
5  motion to grant bail, prepared on January 4, 2016, was filed on January 6, 2016. ECF No. 122.

II.  DEFENDANT'S § 2255 MOTION

A.  Defendant's Contentions

Defendant claims two errors: (1) his sentence is "illegal" and he received constitutionally ineffective assistance of counsel at sentencing; and (2) the trial court erred in considering at sentencing examples of *mens rea* offered by the government. ECF No. 115-1 at 14. Both claims arise from defendant's contention that the plea deal he agreed to should have been clarified to limit his *mens rea* to recklessness, which would have entitled him to a "minimal sentence," but that the plea agreement presented to the court did not "contain the defendant's clarifications." *Id*. at 20-21. Defendant asserts the presentence report presented to the court described "defendant's actions as 'deliberate and malicious' rather than simply 'reckless.'" *Id* at 22.

Apparently referring to his February 2015 motion to end Mr. Wiseman's representation, defendant asserts that his motion to terminate counsel explained that "he had not knowingly signed the plea deal" and had taken "issue with the government's characterization of crimes" beyond what was contained in the plea agreement. *Id*. He also requested that "his statement of elocution (sic) [be] submitted to the court to help make his point on *mens rea*." *Id*. Defendant states he also moved to withdraw his guilty plea because of the dispute over his *mens rea*. *Id*. at 24-25. Ultimately, the parties filed the stipulation described above. Defendant contends 15 U.S.C. § 77(x) requires a finding of a willful violation of 15 U.S.C. § 77q(a) to support the penalty of incarceration, and he argues the court erred by sentencing him without resolving the dispute over which *mens rea* standard, reckless or willful, applied. *Id*. at 27, 32. Defendant also contends the court erred in accepting arguments from the government for application of the willful *mens rea* standard, while disregarding defendant's "statement of

3

elocution (sic)." *Id*. at 32. He also contends Mr. Wiseman "was generally ineffective during the sentencing phase" for the reasons cited in the § 2255 motion. *Id*. at 34.

B. Government's Response

In opposition to the motion, the government first contends that defendant's sentence could have been properly based on either reckless or knowing conduct and is therefore not illegal. ECF No. 128 at 14. Second, the government contends defendant pleaded guilty to conduct that "went well beyond recklessness" and showed that he "knowingly made misrepresentations of material fact to investors to secure their funds." *Id*. at 16. Third, the government contends defendant was not misled about whether the conduct he admitted could result in prison time. *Id*. at 19. Fourth, the government contends it did not engage in misconduct either in the preparation and presentation of the plea agreement or at sentencing. *Id*. at 20. Finally, the government contends defendant received effective assistance from Mr. Wiseman and that defendant has not shown he suffered any cognizable prejudice as a result of Mr. Wiseman's performance. *Id*. at 22-24.

C. Analysis

1. Ineffective Assistance of Counsel

Defendant claims he received constitutionally ineffective assistance of counsel from Mr. Wiseman "during the sentencing phase" and that Mr. Locke "probably erred in not requiring that the unsigned plea deal be remedied." ECF No. 115-1 at 34.

The federal law on claims of attorney ineffectiveness is clear:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688.

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments supported the limitations on investigation. In other

4

> words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Id.* at 690-91. The court must presume that counsel acted effectively and evaluate strategic decisions to determine whether those decisions were "reasonable at the time." *Harrington v. Richter*, 562 U.S. 86, 107 (2011); *see also Strickland*, 466 U.S. at 689 (internal citation omitted) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"). In *Harrington*, the Supreme Court emphasized the deference *Strickland* requires, noting that a court must presume that counsel acted effectively and reiterating that "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington,* 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690).

It also is defendant's burden to establish prejudice: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other." *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002); *see also Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998) ("[It] is unnecessary to consider the prejudice prong of *Strickland* if the petitioner cannot even establish incompetence under the first prong.").

The gravamen of defendant's claim appears to arise from contentions that, distilled to their essence, are as follows: at the time he entered his guilty plea defendant believed he was pleading guilty only to "reckless" misconduct and, therefore, that he could not be sentenced to prison. Although it is not entirely clear, it appears defendant's claim is that Mr. Wiseman, his

attorney at the time he entered his plea, misled him about the content and consequences of the plea agreement and pressured him into pleading guilty, which defendant agreed to do because he thought he would avoid a prison sentence.

This claim is without merit. Defendant has presented no evidence that Mr. Wiseman advised him that pleading guilty only to "recklessness" would guarantee defendant would avoid a prison sentence. While defendant signed the form § 2255 motion he filed with his motion under penalty of perjury, *see* ECF No. 115-1 at 1, 12, he did not similarly verify the attachment to that form, which he denominated "Amended Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255." *See* ECF No. 115-1 at 13, 36. The attachment contains all of the allegations that defendant relies on to support his motion. Under appropriate circumstances, a verified pleading "may be treated as an affidavit to the extent that [it] is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify." *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985) (citing *Runnels v. Rosendale*, 499 F.2d 733, 734 n.1 (9th Cir. 1974)). Even if the court were to construe the attachment as an affidavit, the document contains nothing that qualifies as evidence that counsel advised defendant he would not face a prison sentence if he pleaded guilty. The only allegations concerning counsel's advice about possible penalty are as follows:

> The defendant had trouble pleading guilty. The court stated that it noted hesitancy and asked the defendant to confer with counsel outside of chambers. The defendant left and told counsel he couldn't plead because he was innocent and the factual allegations were inaccurate.
>
> **Defendant was then told by counsel that this plea was the federal equivalent of "criminal negligence" and that the recklessly concession materially justified a minimal sentence.** He reminded the defendant that the factual basis should be viewed through the lens of recklessly, and so Mr. Sarad returned to the courtroom and made a guilty plea, again the court noted hesitancy, but ultimately accepted the plea.

ECF No. 115-1 at 21 (emphasis added). Nothing in these assertions sheds any light on defense counsel's advice to defendant concerning whether the plea would expose defendant to incarceration.

The transcript of the change of plea hearing conducted on August 6, 2014 shows defendant told the court under oath that (1) he had had a chance to fully review the plea agreement presented to the court before he signed it, ECF No. 96 at 4; (2) he had "had a chance to fully discuss the new charging document, the superseding information and the charge in that document" with his attorney, *id*. at 5-6; (3) that he was "fully satisfied" with his counsel's advice and representation of him, *id*. at 6; and (4) that it was his voluntary decision to plead guilty, *id*. The court engaged in extensive discussion with counsel about the guideline sentencing range, the government's agreements concerning that range, and a statement that defendant was "free to recommend to the Court a sentence of no less than 36 months under 18 U.S.C. § 3553(a)." *Id.* at 8. Defendant affirmed the government's review of the plea agreement "accurately summarized his agreement with the government" as he understood it. *Id*. at 7-8. The court told defendant that the charge included a penalty of up to five years' incarceration, and defendant indicated he understood that. *Id*. at 10.

At one point, defense counsel raised a question concerning the agreement of the parties not to seek a departure from stipulated guidelines, and the court, defense counsel and the prosecutor then discussed that issue. *Id*. at 11-14. At the end of the discussion, the court asked defendant if he had any questions about what he had just heard. *Id*. at 14. Defendant responded as follows:

> THE DEFENDANT: My understanding is that both parties would agree to calculate the guidelines in the information in the same way, not that they would – not that I would not ask to depart from sentencing guidelines that might be drafted by the probation office. That was my understanding.

*Id*. The court, defense counsel and the prosecutor all agreed that was consistent with their discussion. *Id*. Defendant also confirmed that he had talked about the guidelines with his counsel, and that he understood that the court could "go outside, above or below the guideline range." *Id*. at 15-16.

Questions about defendant's hesitancy to enter the plea arose twice during the hearing. The court raised the first set of questions after its inquiry about whether defendant's decision to plead guilty was voluntary. The following exchange followed:

7

| | |
|---|---|
| 1 | THE COURT: Is it also based on your own individual, voluntary decision to enter a plea of guilty here today? |
| 2 | |
| | THE DEFENDANT: It is. Yes. |
| 3 | |
| | THE COURT: Just because you appear to be hesitating slightly, is there anything else you'd like to share with me? |
| 4 | |
| 5 | MR. WISEMAN: May I have a moment, Your Honor? |
| 6 | THE COURT: Yes. |
| 7 | (Defendant conferring with his counsel.) |
| 8 | THE DEFENDANT: I just – I have some hesitancy but I know that this is the right decision, it's a decision I want to make. I just – I'm not completely convicted [verbatim] about it, but I've had time to think about it, and I do want to proceed. |
| 9 | |
| 10 | |
| 11 | THE COURT: All right. Well, if you change your mind at any point along the way, there are no right answers to these questions except the answers you yourself wish to give understanding the oath that you took. |
| 12 | |
| 13 | Do you understand that? |
| 14 | THE DEFENDANT: I do, yes. |

*Id*. at 6-7. Later, when going over the factual basis for the plea, the following exchange took place:

> THE COURT: Now I also need to decide if you are admitting to facts that would support each of these elements [of the charged offense]. There's attached to your plea agreement an Exhibit A being presented as a factual basis. It's about one and three-quarters pages long. I can have Ms. Bickley read that into the record or you can rely on the written document.
>
> Mr. Wiseman?
>
> MR. WISEMAN: We would stipulate to reading it in the record. We have reviewed it, and –
>
> THE COURT: Mr. Sarad, do you understand what I'm talking about when I refer to that Exhibit A?
>
> THE DEFENDANT: I do.
>
> THE COURT: Do you agree to rely on the written document and not have it read?
>
> THE DEFENDANT: Yes.

8

| | |
|---|---|
| 1 | THE COURT: Do you have clearly in mind what the written document says? |
| 2 | |
| 3 | THE DEFENDANT: Yes. |
| 4 | THE COURT: Is that in fact what happened and what you did. |
| 5 | (Defendant conferring with his counsel.) |
| 6 | THE DEFENDANT: Yes, it is. I don't agree with everything, but enough of it to plead guilty. |
| 7 | THE COURT: Well, what don't you agree with? |
| 8 | THE DEFENDANT: I'm not prepared to – I haven't thought through what I might want to say. I agree to it. I agree to all of it. |
| 9 | |
| 10 | (Defendant conferring with his counsel.) |
| 11 | THE COURT: Well, I don't know if that's good enough for the Court. |
| 12 | Are there portions that are disputed, Mr. Wiseman? |
| 13 | MR. WISEMAN: May I have a moment? |
| 14 | (Defendant conferring with his counsel.) |
| 15 | THE DEFENDANT: Your Honor, I'd like to agree with the factual basis outlined in Exhibit A in its entirety. I've had time to reflect on it. I would like to strongly agree with it. |
| 16 | |
| 17 | THE COURT: Well, the court doesn't run a railroad, so I need to understand what you said earlier. And the Court – so part of what I'm trying to tell you is the Court does not put words in defendants' mouths. |
| 18 | |
| 19 | |
| 20 | MR. WISEMAN: Your Honor – |
| 21 | THE COURT: I realize it may be a negotiated statement, and that the Court has no part in that. |
| 22 | So are you telling me that in fact everything set forth in Exhibit A is what you did and what happened? |
| 23 | |
| 24 | THE DEFENDANT: I think what you said is correct, it's a negotiated statement. I recognize that I have risks that could result in a conviction, so we negotiated a statement that, umm, we're submitting to you. |
| 25 | |
| 26 | THE COURT: Is there any part of it that says something about what you did or what happened that in your mind is not true? |
| 27 | |
| 28 | MR. WISEMAN: Your Honor, maybe we should – |

1   THE DEFENDANT: Can we have a moment?

2   THE COURT: You may.

3   MR. WISEMAN: Or maybe we should just pass this whole thing, if the court wishes, for –

4   THE COURT: I'll trail it. We'll call it at the end of the calendar.

5   MR. WISEMAN: That's fine.

*Id*. at 20-22. When the hearing resumed, the court again questioned defendant and he responded, under oath, that he had "clearly in mind" what Exhibit A to the plea agreement said, that the Exhibit "set forth what happened and what [he] did," and that he had neither doubt about that nor "material disagreement" with any of those facts. *Id*. at 24-25. Defendant affirmatively represented that the factual basis contained in Exhibit A was "a fair characterization of what happened." *Id*. at 25.

The statements made by defendant in open court at the time his plea was entered "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Defendant's assertions in his § 2255 motion, that he only signed the signature page of his plea agreement and did not realize until after he entered his plea that the changes he asked for had not been incorporated in either the plea agreement or the factual basis for that agreement, *see* ECF No. 115-1 at 20-21, are belied by the transcript of the entry of his plea. Moreover, in the face of the statements he made in court, defendant's general statement in his amended § 2255 motion that he understood the *mens rea* he agreed to "justified a minimal sentence" is simply insufficient to show he received constitutionally ineffective assistance of counsel about the possibility he would face incarceration as a result of entering into the plea agreement, either before he entered his plea or at sentencing. *See* ECF No. 115-1 at 21. Finally, defendant's allegations about Mr. Locke, his counsel at sentencing, are too conclusory to support a claim of ineffective assistance of counsel arising from his representation. *See, e.g., id.* at 34.

For these reasons, defendant's first claim for relief will be denied.

### 2. Trial Court Error

Defendant's second claim is that this court erred at sentencing by accepting arguments made by the government to support a finding that defendant was willful in his commission of the charged offense, while disregarding defendant's contentions that he was only reckless. Nothing in the record supports defendant's assertion that the court failed to consider his contentions when imposing sentence, and the record is to the contrary. Indeed, defendant acknowledged at sentencing that the court had had a "fair dose" of his opinion. ECF No. 124 at 23. Defendant apparently proceeds from the contention that 15 U.S.C. § 77(x), the penalty provision for the offense charged under 15 U.S.C. § 77q(a), only authorizes incarceration for "willful" violations of 15 U.S.C. § 77q(a), not reckless ones. *See* ECF No. 115-1 at 27, 31.

On August 21, 2015, the parties presented the court with the following "Stipulation for Sentencing."

> The defendant, Matthew Sarad, by and through his undersigned attorney, and the United States, by and through its undersigned attorney, hereby stipulate to the following facts so as to resolve an issue that has been in contention in this sentencing proceeding:
>
> The defendant paid real scientists to perform real research, but from the beginning he made a series of misrepresentations to cause investors to part with money, as outlined in the plea bargain, in violation of 15 U.S.C. §§ 77q(a) and 77x. The plea bargain mental state discusses and includes the standard of reckless or willful. The defendant believes that absent a trial the lower mental state is to be presumed, but the government disagrees.

ECF No. 97. At sentencing, noting the disagreement of the parties over whether defendant's misconduct had been reckless or willful, the court stated that the distinction between the two and its assessment of the dispute would "inform [its] application of the 3553 factors." ECF No. 124 at 9, 21. Defendant asked for a sentence of 36 months, some or all to be served as home confinement; the government argued for a sentence of 60 months. *Id.* at 21-22. Ultimately, the court sentenced defendant to 48 months in prison, *id.* at 25, and issued the following statement of reasons for the sentence:

> The court varied downward to 48 months, as opposed to the 36 months including home detention requested by the defense. The variance is from the guidelines "range" of 60 months (the statutory

11

> maximum, given the range would otherwise be 87 to 108 months) and is based on the court's weighing of the following mitigating and aggravating factors: Mr. Sarad's lack of any criminal history; his full compliance with conditions of pretrial release for more than 3-1/2 years; his having engaged between 2005 and 2008 in a pattern of repeated misrepresentations about the status and effectiveness of nanotechnology and telomerase technology to a large number of investors (a total of approximately 400, large and small) in serial business ventures; his having expended a substantial amount of the money raised from investors on a luxury home and automobile, and a significant amount of the funds as well on marketing and sales, while at the same time also having directed a significant amount of the funds raised to scientific research with reputable institutions and researchers; his alcohol abuse; and, to avoid unwarranted disparities, the mean and median sentences imposed in equivalent cases.

ECF No. 102; *see also* ECF No. 124 at 24-26. The court relied in part on defendant's admission that he made "false statements in connection with promoting" the technology at issue and through his operation of Sun Nanosystems. The court also noted it was troubled by "a pattern of purveying false information." ECF No. 124 at 25.

The court ultimately did not make any specific finding as to whether defendant's fraud was reckless or willful to support the decision to require defendant to serve 48 months in prison. Nor was it required to do so. Section 77x of Title 15 of the United States Code requires a showing that defendant was aware of the falsifications that were the basis of the fraud "'and did not falsify through ignorance, mistake, or accident,' but '[t]here is no higher standard for a willful violation of the securities laws.'" *United States v. Lloyd*, 807 F.3d 1128, 1166 (9th Cir. 2015) (quoting *United States v. Reyes*, 77 F.3d 1069, 1080 (9th Cir. 2009)). Whether characterized as reckless or as willful, defendant's own admissions demonstrate he was aware of making false statements and his misconduct was the result of more than "ignorance, mistake, or accident." Defendant's second claim for relief will be denied.

For all of the foregoing reasons, defendant's amended § 2255 motion will be denied. Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts requires the district court to "issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2255. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b). For the reasons set forth in this order, defendant has not made a substantial showing of the denial of a constitutional right. Accordingly, the court will not issue a certificate of appealability.

Finally, defendant's motion to grant bail, ECF No. 122, is moot and will be denied for that reason.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendant's December 28, 2015 amended motion to vacate, set aside, or correct sentence, ECF No. 115, is denied;
2. Defendant's December 28, 2015 motion for in forma pauperis status is denied as unnecessary;
3. Defendant's January 6, 2016 motion to grant bail is denied;
4. This court declines to issue a certificate of appealability; and
5. The Clerk of the Court is directed to close the companion civil case No. 2:15-cv-2142 KJM.

DATED: November 9, 2017.

_____
UNITED STATES DISTRICT JUDGE